## Illinois Central Railroad Company v. David A. Wall.

1. RAILROADS—*Liability for Injuries to Persons on Their Premises Without Right.* —Where a person is on a platform of a railroad company merely as a spectator, waiting the arrival of a friend upon an incoming train, the company will be liable for injuries received by him through gross negligence or recklessness of its servants.

2. INSTRUCTIONS—*Estoppel of a Party to Object.*—One party can not have instructions upon a certain theory and then be heard to object because the other party has had the same.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of Marion County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the February term, 1894, and affirmed. Opinion filed June 23, 1894.

The opinion states the case.

W. & E. L. STOKER and WILLIAM H. GREEN, attorneys for appellant.

CHAS. F. PATTERSON and FRANK F. NOLEMAN, attorneys for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

Appellant's track and that of the Ohio & Mississippi Railway cross each other at an acute angle at Odin, and the triangle of ground south of their intersection called a park is bounded by the platform of appellant on the east, by the platform of the other road on the west, and by a common platform or "gangway" connecting the two platforms on the south. Appellant's depot is south of the "gangway" and west of its main platform, and is entered by a door on the north, from the "gangway," or by one on the east from the main platform. The tracks of appellant are east of the main platform, which is about sixteen feet in width and extends north and south on the east side of the depot and park. The width of the "gangway" is about

eleven feet. The several platforms above mentioned are furnished with a railing or banister on the inner or park side. The "gangway" is six or eight feet higher than the surface of the park. The depot, park and platforms lie between the two principal streets of Odin. At the time when appellee was injured, the "gangway" was used to a considerable extent by the public as a walk in crossing from one street to the other.

On the evening of January 27, 1893, appellee heard that a man named Hill would pass through Odin on the following morning on his way to the penitentiary at Chester. For fifteen or sixteen years prior to the fall of 1892, appellee had lived near Centralia and had known Hill as a friend. Hill's daughter and one of appellee's daughters were in the same postoffice, and the former had visited the latter at appellee's house. That the two men had been friends and neighbors was admitted by appellant's counsel on the trial. Appellee evidently did not believe his friend to be guilty, but expressed his opinion on the trial that it did not follow that a man was in fact guilty simply because he had been convicted and sentenced to the penitentiary. But even if Hill was actually guilty of the crime for which he had been sentenced, we are unable to see how this fact can have any legitimate bearing on the questions presented by this record. If a man has a right to go to a train to see a friend who may be a passenger thereon, it is wholly immaterial whether that friend is the sheriff or the convict. The railroad company is compelled to carry both, and charges as much for the felon as for the officer, and there is no rule of law or ethics which says that the man who wears handcuffs shall not be permitted the sympathizing pressure of the hand of a friend. At nine or ten o'clock on January 28th, being the time for the arrival of appellant's train, appellee was at the depot; he exchanged a few words with an acquaintance and moved to a position on the north side of the "gangway" and about six or eight feet west of appellant's main platform, and stood there leaning on the railing, and looking north at some gentlemen who were approaching from that direction.

Appellant's train was lying at the platform. One Ferguson, an employe of appellant, had received five trunks from the baggage car and placed them upon a large, heavy truck about three feet wide for the purpose of transferring them to a train then due, and perhaps then standing on the track of the Ohio & Mississippi Railway. Ferguson pushed the truck to the " gangway " and then undertook to pull it over the " gangway " to the other platform. He was in a hurry, and went faster than usual, and in his haste did not allow sufficient room to make the turn and to proceed with due regard for the safety of the by-standers. He is described as a " hustler," and had been warned before the accident that he should exercise greater care in handling the truck. There were many persons on the platform and some were in the way, but all succeeded in escaping except appellee, who was struck and knocked down. Ferguson pulled the wheel upon appellee's heel, and then abated his zeal till the fallen man was rescued by the by-standers, and then, according to his own testimony, " went right on." " I did not have time to help pick him up," he says. In other words life and limb must yield to the time table. It is said that Ferguson, as he moved into the " gangway " called out for the people to get out of the way. Certain witnesses who were near him at the time heard no warning. Appellee heard none, but was run down, without warning, when there was no necessity for the act. His injuries were the result of Ferguson's grossly reckless and negligent conduct. Perhaps appellant took the same view of the accident in discharging Ferguson three days afterward. However that may be, the evidence, in our opinion, abundantly supports the verdict of the jury. No complaint is made of the amount of the judgment. The verdict was for $2,500. A remittitur of $1,000 was entered. The evidence justifies a judgment for the remaining $1,500.

At the request of appellee the court gave to the jury the following instruction :

" If you believe from the evidence that the plaintiff on the day in question did not intend to become a passenger on

defendant's railroad, yet, if you believe the plaintiff was in good faith there waiting to see a person out of mere friendship, whom he expected to be a passenger on defendant's railroad, the plaintiff had a right to be upon said platform, although the person whom he expected did not in fact arrive. And if you further believe from the evidence that the plaintiff while so waiting and using due care and caution for his own safety, was injured by the defendant's servant's gross negligence or recklessness (if shown by the evidence) in manner and form as charged in plaintiff's declaration, then you should find for the plaintiff."

The first criticism of this instruction is that appellee had no right to be on the platform, but should have been in the waiting room; that Hill was to arrive on the Ohio & Mississippi road, and appellee had no right to wait for him on the Central's platform. The evidence shows that appellee expected Hill to come on one road and leave on the other. This being true, his position was such as he would naturally suppose would enable him to see his friend. But even if appellee was on the platform without right, the company would be liable for injuries received by him through the gross negligence or recklessness of its servant, and upon such negligence the liability is predicated by this instruction and also by the second instruction given at the request of appellant.

The second criticism is that the declaration charges and the instruction assumes that the accident occurred on the platform, whereas the proof shows it happened on the "gangway." In the examination of witnesses appellant's counsel repeatedly used the word "platform" instead of "gangway," and should not now be heard to complain of the court for using the same word in the instructions. The evidence shows that the "gangway" was a platform. The fact that its principal use was as a passageway between the roads, does not render the name platform inappropriate.

The last criticism is that there is no evidence in the record tending to show gross negligence on the part of appellant, and that the instruction is therefore erroneous as not being based upon the evidence. Appellant's second in-

struction assumes that there is evidence tending to show gross negligence, and a complaint of a similar instruction given at the request of appellee should not, therefore, be entertained. One party can not instruct upon a certain theory and then be heard to object because the other party has done the same.

Besides, we hold that there is evidence not only tending to show, but also showing, gross negligence. As to the other points presented in the discussion of this case, it is sufficient to say that the first, second and fourth of appellant's refused instructions do not correctly state the law as applied to the facts disclosed by this record; that the substance of the third refused instruction is contained in the instructions given, and that no objection was made on the trial to the evidence now complained of as being inadmissible. The judgment is affirmed.